| | | |
|---|---|---|
| MARK SCHLEIPFER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:06CV109 CDP |
| | ) | |
| MITEK CORP. d/b/a MTX CORP., | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Mark Schleipfer is a former employee of Mitek Corporation and its CEO and founder, Lloyd Ivey (together, Mitek). In his amended complaint, Schleipfer alleges that Mitek violated the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., by not paying him and other similarly situated employees overtime compensation. Schleipfer now moves for conditional certification of this case as a collective action under FLSA so that he may notify certain past and present Mitek employees of this action and provide them the opportunity to "opt in" as plaintiffs to this litigation. Mitek opposes conditional certification on the ground that Schleipfer is not similarly situated to any other member of the proposed collective action. I will grant Schleipfer's motion for the reasons that follow.

<u>Factual Background</u>

Mitek manufactures car, home and commercial audio products. Mitek sells its products wholesale to retailers, who in turn distribute the products to consumers. Mitek has facilities in Wisconsin, Illinois, Missouri and Arizona. The Missouri facility includes a for-profit ranch operation.

Schleipfer worked for Mitek from October 1990 to May of 2006, first at the Arizona facility and then in Missouri. During his time in Missouri, Schleipfer held the job titles of "Director of Corporate Sponsorships" and "Vice President of Marketing Logistics." Mitek contends that Schleipfer was a managerial employee who was paid on a salary basis and responsible for managing the entire marketing department and the ranch. Mitek asserts that Schleipfer was authorized to make contracts and purchases on behalf of the company, ship products and make hiring and firing recommendations. Mitek claims that as a managerial employee, Schleipfer was exempt from FLSA's overtime compensation provisions as a bona fide executive.

In contrast, Schleipfer alleges that his job titles "belied the true nature of his work." (Schleipfer Aff. ¶ 5). According to Schleipfer, he did have people that "reported to him," but he really was just "first among equals." (Id. at ¶ 5). Schleipfer alleges that the vast majority of his time at work "was spent doing

promotional work and/or manual labor for defendants." (Id. at ¶ 5). Schleipfer

contends that this "promotional work and/or manual labor" was performed at

events and trade shows and included "traveling to and from the shows, readying

vehicles for the shows, greeting show attendees, distributing promotional literature,

and demonstrating products." (Id. at ¶ 6). Schleipfer also claims that he was never

involved with the sales of Mitek products at these events and shows; instead, his

duties were limited to promoting goods that independent contractors would sell.

(Id. at ¶ 7). Schleipfer states that other Mitek employees were similarly situated to

him and were also required to perform these promotional duties.

In addition to promotional work, Schleipfer avers that he and the other

similarly-situated employees were required to perform manual labor for

defendants. (Id. at ¶ 10). The manual labor included "erecting and disassembling

booths and displays at events and trade shows, maintenance of farm land and other

buildings, landscaping of defendants' property, cleaning and removing

construction debris, and driving individuals from place to place." (Id. at ¶ 11).

Schleipfer was not paid overtime. He alleges that he and the other similarly-

situated employees were told that defendants expected them to view the job "as a

lifestyle choice and that defendants did not pay overtime." (Id. at ¶ 12). Schleipfer

avers that he and those similarly-situated were required to maintain detailed time

sheets and report the hours they worked. (Id. at ¶ 13). Schleipfer estimates that between 40 and 50 salaried employees were not paid overtime regardless of the number of hours worked and were expected to view their jobs as "lifestyle choices even though they would be required to perform whatever tasks were assigned to them by Mr. Ivey without respect to their job titles or typical job duties." (Id. at ¶ 14). Schleipfer states that these employees were also required to attend events and trade shows and performed the same kind of promotional duties as Schleipfer, and that some of these employees were also instructed to perform manual labor. (Id. at ¶ 15). According to Schleipfer, included in the class of similarly-situated employees are Paul Schleipfer, Eric DeGaston, Shawn Franquero, Mike McCormick, Bill Smith, Melvin Patterson, Jason Plank, and Craig Marsh. (Id. at ¶ 15). Schleipfer claims that there are other employees who are similarly-situated to him that he cannot name, but he believes that he can obtain this information from Mitek.

Schleipfer alleges that "defendants have acted on grounds applicable to all the above described similarly-situated employees by adopting a pattern and practice of compensating all such employees for the time worked by the employees in a way that does not comply with FLSA. Specifically, defendants have a policy of not paying overtime to salaried employees regardless of the number of hours

worked or the types of duties performed by the employees." (Id. at ¶ 17). Finally, Schleipfer contends that collective action treatment is appropriate because they are all "victims of a single decision, policy, and plan respecting the denial of proper overtime compensation," and the claims of each putative collective action member would involve common questions of law and fact. (Id. at ¶ 19). Schleipfer requests an order conditionally certifying the collective action to include:

> All former and present employees of Defendants who at any time since February 1, 2004 to the present: (a) performed promotional work and/or manual labor in any work week; (b) worked more than 40 hours during any such work week; and (c) were not paid overtime compensation in an amount equal to one and one-half times the employee's regular hourly rate of pay for the hours worked more than 40 during such work week(s).

Schleipfer also seeks authorization to provide notice of the pending litigation to all members of the putative collective action.

<u>Discussion</u>

Section 7 of the Fair Labor Standards Act mandates that an employer may not subject non-exempt employees to a work week in excess of 40 hours unless the employee is compensated for her overtime with additional pay of at least one and one half times her regular hourly wage. 29 U.S.C. § 207. The Act also provides that any employer who violates this restriction "shall be liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation . . .

and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

An action to recover the overtime and liquidated damages may be maintained "by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." Id. The FLSA does not define the term "similarly situated."[1] Although the Eighth Circuit Court of Appeals has not decided the standard to determine whether potential opt-in plaintiffs are "similarly situated" under § 216(b), the district courts in this circuit use a two-step analysis. See e.g., Parker v. Rowland Express, Inc., 492 F. Supp. 2d 1159 (D. Minn. 2007); Davis v. Novastar Mortgage, Inc., 408 F. Supp. 2d 811 (W.D. Mo. 2005); Dietrich v. Liberty Square L.L.C., 230 F.R.D. 574 (N.D. Iowa 2005); McQuay v. American Int'l Group, Inc., 2002 WL 31475212 (E.D. Ark. 2002).

As is typical under the two-step process, Schleipfer has moved for conditional certification for notice purposes at an early stage of the litigation. See Davis, 408 F. Supp. 2d at 815. At this first step in the process, I do not reach the merits of Schleipfer's claims. Hoffmann v. Sbarro, Inc., 982 F.Supp. 249, 262

---

[1]A 216(b) collective action differs from class actions brought under Rule 23 of the Federal Rules of Civil Procedure. Davis v. Novastar Mortgage, Inc., 408 F. Supp. 2d 811, 814-15 (W.D. Mo. 2005). A primary distinction is that under FLSA a similarly situated employee must "opt-in" to the collective action to be bound by it, whereas under Rule 23, a similarly situated employee must "opt-out" to avoid being bound by the judgment. Id. See also Grayson v. K Mart, 79 F.3d 1086, 1096 (11th Cir. 1996) (noting that the "similarly situated" standard is considerably less stringent than Rule 23(b)(3) class action standards).

(S.D.N.Y. 1997) (citation omitted). Schleipfer's burden at this stage is not

onerous. <u>See</u> <u>Smith v. Heartland Automotive Services, Inc.</u>, 404 F. Supp. 2d 1144,

1149 (D. Minn. 2005) (burden at first stage is "not rigorous"). Conditional

certification at the notice stage requires "nothing more than substantial allegations

that the putative class members were together the victims of a single decision,

policy or plan." <u>Davis</u>, 408 F. Supp. 2d at 815. "Plaintiffs need not show that

members of the conditionally certified class are actually similarly situated." <u>Fast v.</u>

<u>Applebee's International, Inc.</u>, 2007 WL 1796205, *3 (W.D. Mo. June 19, 2007).

That determination is made during the second step of the process, after the close of

discovery. <u>Id.</u> "Determining whether such a collective action is the appropriate

means for prosecuting an action is in the Court's discretion." <u>Heartland</u>, 404 F.

Supp. 2d at 1149 (citation omitted). Once the Court conditionally certifies the

class, potential class members are given notice and the opportunity to "opt-in."

<u>Parker</u>, 492 F. Supp. 2d at 1159.

 At the second step of the process, the defendant may move to decertify the

class. This is typically done after the close of discovery when I have more

information and am able to make a factual determination as to whether the

members of the conditionally certified class are similarly situated. <u>See</u> <u>Davis</u>, 408

F. Supp. 2d at 815. To be similarly situated, however, "class members need not be

identically situated." <u>Fast</u>, 2007 WL 1796205, *4 (W.D. Mo. June 19, 2007).

Having reviewed Schleipfer's motion in light of the relevant standards, I find that he has cleared the relatively low hurdle of demonstrating that conditional certification of the collective action is appropriate. Schleipfer has come forward with substantial allegations that he and the other members of the proposed collective action were victims of a single decision, policy or plan to deprive them of overtime compensation. Schleipfer has adequately alleged that the promotional and manual work he performed was generally comparable to those he seeks to represent, and he has described that work in sufficient detail so that other proposed members of the collective action who performed similar tasks may be identified and notified of the action. At this stage of the proceedings, Schleipfer is not required to do more.

Mitek argues that Schleipfer cannot represent the proposed collective action members because he is a managerial employee (and therefore exempt from the overtime provisions of FLSA). This argument goes to the merits of Schleipfer's claim and is not yet ripe for resolution. For purposes of this motion, it also does not preclude conditional certification of a collective action. After discovery is complete and the matter is fully briefed, I may decertify the collective action for this (or some other) reason advanced by Mitek. But I cannot deny conditional

certification of the proposed collective action simply because Schleipfer may not ultimately prevail on his FLSA claim.

Mitek has also objected to certain aspects of Schleipfer's proposed Notice of Collective Action and Consent to Join. Mitek's objections are meritless, with one exception. I will order Schleipfer to revise the notice to include the following language:

> Plaintiff has alleged that Defendants have violated the Fair Labor Standards Act. Defendants have denied the allegations and have set forth affirmative defenses. The Court has not taken any position on the merits of Plaintiff's allegations nor has it taken a position on the merits of Defendants' denials and affirmative defenses to the allegations.

This language shall appear in Section 5 of the notice, "Description of the Lawsuit," and shall be inserted at the end of the second paragraph in place of the sentence, "The legal allegations are that the Defendants have violated the Fair Labor Standards Act," which shall be stricken from the notice. As for Mitek's remaining objections, they are overruled. The proposed notice adequately advises potential plaintiffs that they may retain their own attorney, and opt-in plaintiffs are not required to provide detailed information about their claims to demonstrate their consent to join the collective action. Mitek may obtain the requested information from any opt-in plaintiff through discovery, and I am confident that if the information actually "assists the court in determining whether a collective action is

appropriate," then I will see it in support of a motion for decertification and/or summary judgment. Finally, **I remind the parties of their obligation to submit a joint proposed amended case management order within five (5) days of the date of this Memorandum and Order.**

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for order conditionally certifying collective action [#26-1] is granted, and the Court conditionally certifies plaintiff's collective action.

**IT IS FURTHER ORDERED** that plaintiff's motion for authorization to send notice of suit to potential opt-in plaintiffs [#26-2] is granted in part. Plaintiff may send out a notice **consistent with this Order**. Defendants must produce to plaintiff a list of all potential class members, including their last known mailing address and telephone numbers (if known) within 30 days of the date of this Order.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


Dated this 29th day of August, 2007.